IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

PATRICIA BALDERAS,

                        Plaintiff

           VS.                                      **NO. 5:05-CV-390 (CWH)**

JO ANNE B. BARNHART,                                **SOCIAL SECURITY APPEAL**
S.S. Commissioner,

                        Defendant

| **O R D E R** |
| --- |

        This is a review of a final decision of the Commissioner of Social Security denying the plaintiff's claim for benefits under the Social Security Act, 42 U.S.C. § 423. On April 16, 2003 the plaintiff filed an application for Social Security disability benefits. She originally alleged disability commencing on February 15, 2002, but has since amended her claim to allege that she has been disabled since August 29, 2002 due to disorders of the spine and pain resulting from those spinal disorders. The claim was denied initially and on further review. Thereafter, plaintiff requested a hearing before an Administrative Law Judge (ALJ) who denied her claim.

        This civil action was commenced after the recommendation to deny benefits was adopted as the Commissioner's final decision in this case. Both parties have consented for the United States Magistrate Judge to conduct any and all proceedings herein including the ordering of the entry of judgment. Any appeal from this judgment permitted by law may be taken directly to the Court of Appeals of the Eleventh Circuit in the same manner as an appeal from any other judgment of a district court. 28 U.S.C. § 636(c)(3).

        In this appeal, the plaintiff contends that substantial evidence does not support the Commissioner's decision because he dismissed all of her evidence in support of her claim of severe pain on the basis of lack of credibility. *Pl. Brief at* 4.

**LEGAL STANDARDS**

The court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996 (11th Cir. 1987). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971).

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must, however, decide if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980). The court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings. *Bloodsworth v. Heckler, supra*, at 1239. However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it. *Id.*

The initial burden of establishing disability is on the claimant. *Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973). However, the claimant's burden is a heavy one and is so stringent that it has been described as bordering on the unrealistic. *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981).

A claimant seeking Social Security disability benefits must demonstrate that he suffers from an impairment that prevents him from engaging in any substantial gainful activity for a twelve-month period. 42 U.S.C. § 423(d)(1). In addition to meeting the requirements of these statutes, in order to be eligible for disability payments, a claimant must meet the requirements of the Commissioner's regulations promulgated pursuant to the authority given in the Social Security Act. 20 C.F.R. 404.1 et seq.

Under the regulations, the Commissioner determines if a claimant is disabled by a five step procedure. 20 C.F.R. § 404.1520, Appendix 1, Part 404. First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an

impairment which prevents the performance of basic work activities.  Next, the Commissioner determines whether the claimant's impairment(s) meets or equals an impairment listed in Appendix 1 of Part 404 of the regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work. Finally, the Commissioner determines whether the claimant's residual functional capacity, age, education, and past work experience prevents the performance of any other work.

In arriving at a decision, the Commissioner must consider the combined effect of all the alleged impairments, without regard to whether each impairment, if considered separately, would be disabling.  *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984). The Commissioner's failure to apply correct legal standards to the evidence presented is grounds or reversal. *Id.*

The standard for whether pain in and of itself is a disabling condition "requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Foot v. Chater*, 67 F. 3d 1553, 1560 (11th Cir. 1995).

Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). *See also Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

## MEDICAL EVIDENCE

The ALJ's written opinion makes the following findings of fact, which this court finds are supported by the evidence before him:

The claimant has degenerative disc disease of the lumbar spine, which represents a severe impairment for the purposes of the Regulations, but not severe enough to meet the criteria of Section 1.04, which deals specifically with spinal conditions. *Tr.* at 14-15. "Records from treating and examining sources establish that the claimant has a history of chronic low back pain." *Tr. at* 15

> A CT of the lumbar spine...demonstrated circumferential bulging of the L4-5 intervertebral disc in combination with facet joint arthropathy and hypertrophy of the ligamentum flavum at this level bilaterally causing mild to moderate spinal stenosis. There was compression of the L4 nerve root ass it exists in the intervertebral neuroforamen at this level and mild medial deviation of the left L5 root as it exists the thecal sac at this level. Mild spinal stenosis at the L3-4 level due to congenitally short pedicles and mild facet joint arthropathy at this level. There is minimal circumferential bulging of the L3-4 intervertebral disc...Because the claimant's condition failed to improve with conservative treatment, her physicians recommended surgical intervention.

> On August 29, 2002 the claimant underwent lumbar discectomy and fusion at L4-5. Subsequent treatment records establish that [the plaintiff] continued to voice complaints of back pain associated with numbness in the left leg. MRI of the lumbar spine performed on December 20, 2002 revealed postsurgical changes at L4-5 with findings of minimal postoperative fibrosis. However there was no evidence of disc herniation or abnormal enhancement to suggest any postoperative infectious process.

> On January 3, 2003, physical examination revealed that the claimant "remains neurologically intact. She has good strength and normal sensation throughout. She describes some hypesthesia about her buttock and left thigh. She really doesn't have any trochanteric tenderness. She has some mild tenderness over her anterolateral corner of her ankle and ATFL and CFL." Dr. Jarrett recommended conservative treatment, including use of Neurontin, Celebrex, and Vicodin and referred the claimant to a specialist in pain management. However, Ms. Balderas failed to show for two appointments at the Pain Institute of Georgia. With that said, she sought prescriptions for pain medication on numerous occasions from the emergency room ... from October 2002 through July 2003, despite Dr. Jarrett's repeated warnings about overuse of pain medicine.

> When the claimant returned for follow -up on January 31, 2003, Dr. Jarrett noted that she was making progress, as she was receiving relief from discomfort with use of medication. Further, he noted that "she is ready to go back to light duty." Thereafter, the claimant returned to work, but only worked a short time before complaining of recurrent low back pain. Once again, Dr. Jarrett offered to refer her to a pain clinic for management of her chronic pain, as well as to another orthopedist for a second opinion. Again, the claimant declined his offers. Although the claimant had some tenderness around her incision and over her left buttock, subsequent examinations consistently revealed full range of motion of the lumbar spine, negative straight leg raise bilaterally, and good strength and normal sensation throughout her lower extremities. Because her examinations were essentially benign, Dr. Jarrett opined that the etiology of her symptoms was unclear and referred her to a local pain clinic for a series of lumbar epidural steroid injections.

-4-

On June 30, 2003, the claimant reported significant improvement in pain after undergoing removal of a pelvic mass.  She admitted that the quality of pain was better than it was before surgery.  In fact, she reported experiencing only occasional low back pain with radiation into the left leg.  Myelogram of the lumbar spine performed on August 6, 2003, demonstrated status post fusion of L4-5 in satisfactory position and alignment, mild degenerative disc disease of L3-4, L4-5, and L5-S1, and degenerative joint disease of L3-4 and L5-S1.  However, it failed to reveal any evidence of disc herniation or nerve root compression.

When the claimant was seen by Dr. Jarrett on August 8, 2003, he advised her that he could find nothing to support her continued need for narcotic pain medication and encouraged her to use over the counter medication.

<em>Tr. at</em> 15-17 (internal citations and emphasis omitted).

The claimant later presented to Dr. Grace Duque-Dizon, a specialist in pain management:

[The plaintiff] described her pain as constant, sharp, shooting pain.  The claimant reported that sometimes activities such as prolonged sitting, standing and walking, as well as stooping, cleaning, and sexual intercourse aggravated her condition.  Ms. Balderas went on to say that she has to use a cane at times when walking.

Examination revealed some limitation of forward flexion to 10-15˚, tenderness to palpation of the SI joints, tenderness along her incision, mild hint of disuse atrophy of the left lower extremity, abnormal gait, and reduced strength (4/5) in the left lower extremity.  Straight leg raise also elicited low back pain at 65-75˚ on the left and 75-85˚ on the right.  Based on this assessment, Dr. Duque-Dizon diagnosed post lumbar laminectomy syndrome and recommended conservative treatment...

<em>Tr. at</em> 17 (emphasis omitted).

**The ALJ's findings**

**1. Credibility**

The ALJ found that the claimant's allegations and testimony, along with the corroborating testimony of her friend, were not credible.  An ALJ may reject the credibility of a claimant's testimony so long as he articulates the grounds for that decision.  *Owens v. Heckler*, 759 F. 2d 1551, 1553 (11th Cir. 1986).  Here the ALJ reasoned as follows: "The objective medical evidence simply does not support the degree of limitations alleged. [The plaintiff] refused offers for a second orthopedic opinion, as well as referral to a pain clinic on at least two occasions, which is inconsistent

-5-

with an individual who is alleging disability due to chronic and severe pain." *Tr. at* 18.  The ALJ went on to discredit the claimant by stating that she had given three different accounts of how and/or when she had hurt her back.  While each of those apparent discrepancies may, on its own, be dismissible as harmless, when viewed together, they support the ALJ's finding as substantial, articulated evidence, and the undersigned cannot refute his finding of lack of credibility. Accordingly, the undersigned gives little weight to the plaintiff's subjective complaints of pain.

### 2. Weight given to physicians' opinions

Most of the medical evidence in this case comes from the findings and opinions of two doctors.  Dr. Jason Jarrett, the plaintiff's treating orthopedist, and Dr. Grace Duque-Dizon, a specialist in pain management.  The ALJ considered both of those doctors' opinions and gave afforded each little evidentiary weight, asserting that both of the opinions were inconsistent with the objective evidence.  *Tr. at* 17 & 18.  After reviewing the medical evidence and those doctors' conclusions, the undersigned finds that the ALJ's decision is supported by substantial evidence.

Dr. Jarrett opined that the etiology of the plaintiff's pain symptoms was unclear, and he could find nothing to support her continued need for narcotic pain medications.  Such findings make it difficult, if not impossible, to accept Dr. Jarrett's opinion that the medical evidence supports the plaintiff's complaints of continuous, disabling pain.  Accordingly, the ALJ was justified in affording Dr. Jarrett's opinion little evidentiary weight.

Dr. Duque-Dizon felt that the claimant was taking medication which would interfere with her ability to work; she further found that Ms. Balderas suffers from conditions that would interfere with her ability to work.  However, the doctor provides no evidence to support such impairments. Conclusory statements from doctors are of little value in Social Security proceedings, and the ALJ is again entitled to afford little evidentiary weight to this opinion.

Other opinions in the file include those of three state agency program consultants who reviewed the file. Each of those consultants found that the plaintiff could perform light to medium work. However, stating that "the evidence clearly demonstrates that [the plaintiff's] lumbar spine impairment results in limitations that would preclude the performance of medium work," the ALJ rejected their conclusions as well, finding that the claimant could only perform light work. *Tr. at* 19.

At the plaintiff's hearing, a friend of the plaintiff testified that she helped the plaintiff to perform daily tasks on an almost daily basis. The ALJ did not find such testimony to be credible and afforded it little evidentiary weight. This issue of credibility must be left to the ALJ.

### Conclusion

Applying the standard set forth in *Foot v. Chater*, *supra*, in order to be entitled to benefits by virtue of being in too much pain to work, a claimant must establish both that there is evidence of an underlying medical condition *and* that the objectively determined medical condition can be reasonably expected to give rise to the amount of pain alleged. It is uncontroverted in this case that the plaintiff has an underlying medical condition that causes her pain in her back, but since this court is bound by the ALJ's findings of credibility, this court must find that her allegations of pain are not credible. Aside from her own testimony concerning her pain and the opinions of doctors that were rightly given little evidentiary weight, supporting medical evidence is lacking to warrant a finding of disability. The ALJ used the correct standard when reviewing the plaintiff's claim, and his decision is supported by substantial evidence.

Accordingly, the Commissioner's decision is **AFFIRMED.** Let judgment enter accordingly. SO ORDERED, this 19th day of MAY, 2006.



CLAUDE W. HICKS, JR.
UNITED STATES MAGISTRATE JUDGE